**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 29 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-30436 |
| | ) | |
| Kenneth Ray Jutte and | ) | Chapter 7 |
| Alicia Michelle Jutte, | ) | |
| | ) | Adv. Pro. No. 13-3089 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| First Financial Bank, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Kenneth Ray Jutte, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on Plaintiff's Motion for Summary Judgment [Doc. # 11] and Defendants' response [Doc. # 15]. Defendants are debtors in the underlying Chapter 7 case. Plaintiff alleges in its complaint that Defendants owe it a debt that arises as a result of their conversion of property in which Plaintiff had a first and best security interest and to which it had a right of possession and that is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6). It moves for summary judgment on its claim under § 523(a)(6) only. For the reasons that follow, Plaintiff's motion will be denied.

## FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are not in dispute. Defendant Kenneth Jutte ("Jutte") is a principal of Jutte Electric, LTD. ("Jutte Electric"). [Doc. # 15, attached Jutte Aff., ¶ 5]. He caused Jutte Electric to file a Chapter 11 bankruptcy petition on June 17, 2011. [*Id.*]. On June 23, 2011, Jutte Electric's bankruptcy schedules were filed, which Jutte declared were true and correct to the best of his knowledge, information and belief. [Case No. 11-33379, Doc. # 15].[1] Schedule B shows assets that include, among other things, certain equipment and inventory, and indicates that the equipment and inventory were valued at $539,653.31 and were located at its shops in Fort Recovery, Ohio, and Columbus, Ohio. [*Id.* at 10/100; Doc. # 11, Ex. 1, Kent Aff., ¶ 25]. The Jutte Electric bankruptcy case was ultimately dismissed. [Case No. 11-33379, Doc. # 213]. Jutte Electric was a debtor-in-possession throughout the pendency of its bankruptcy case.

Prior to seeking bankruptcy protection, Jutte Electric had executed three promissory notes in favor of Plaintiff: (1) a $400,000 note on October 17, 2008, (2) a $350,000 note on October 17, 2008, and (3) a $192,470.83 note on November 5, 2008 (collectively, "the Notes"). [Kent Aff., ¶¶ 2, 7, & 12 and attached Exs. A, C, & E]. As security for the loans, Jutte Electric granted Plaintiff an interest in substantially all of its property, [*id.* at ¶¶ 4, 9, & 14 and attached Exs. B, D, & F], and UCC financing statements were filed with respect thereto on October 23, 2008 and November 5, 2008, [*id.* at ¶¶ 16 & 17 and attached Exs. G, H, & I]. The security agreements provide that "[n]one of the Collateral, other than inventory sold or transferred in the ordinary course of Debtor's business, shall be sold, assigned, [or] transferred. . . ." [*Id.* at Ex. B, ¶ 3(c), Ex. D, ¶ 3(c); Ex. F, p.2]. In addition, Defendants each guaranteed performance under the Notes. [*Id.* at ¶¶ 18 & 20 and attached Exs. J, K, L & M]. The Notes are now in default and, according to Plaintiff, a total of $715,139.20 plus interest, costs and attorney fees is owed under them. [*Id.* at ¶¶ 3, 8, & 13].

Alicia Jutte was not involved on a day-to-day basis in the operations or activities of Jutte Electric. [Doc. # 15, and attached Aff. of Alicia Jutte, ¶ 2]. According to Jutte, in the ordinary course of the business operations of Jutte Electric, he disposed of certain property to which Plaintiff claims an interest but never caused any of Plaintiff's collateral to be transferred to HC3 Group LLC as alleged by Plaintiff. [Jutte Aff.,

---

[1] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

¶¶ 3 & 6]. Jutte holds no ownership interest in HC3 Group LLC but did facilitate the company in obtaining an electrical license. [*Id.* at ¶ 7].

Defendants filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 12, 2012. After being granted an extension of time to file a complaint to determine dischargeability, Plaintiff timely filed the complaint in this proceeding.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting on other grounds) (emphasis in original). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

### II. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable. 11 U.S.C. § 523(a)(6). In order to be entitled to a judgment that the debt is excepted from discharge, Plaintiff must prove by a preponderance of the evidence that the injury from which the debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-2 (Bankr. N.D. Ohio 2001).

Addressing the "willful" requirement of § 523(a)(6), the Supreme Court agreed that "the (a)(6)

3

formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A willful injury thus occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing *Markowitz*, 190 F.3d at 464). Under § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

In this case, Plaintiff's nondischargeability claim under § 523(a)(6) is based on the alleged conversion of its secured collateral by Defendants. Plaintiff argues that Debtors converted certain collateral consisting of equipment, materials and inventory securing the debts owed to it "by transferring portions of the collateral without notice to [Plaintiff] and then refusing to remit proceeds of the transfers to [Plaintiff.]" [Doc. # 11, p. 10]. Whether an act of conversion constitutes a willful and malicious injury depends on whether or not the debtor intended to cause the harm or was substantially certain that such harm would occur. *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001); *J. Bowers Constr. Co. v. Williams (In re Williams),* 233 B.R. 398, 405 (Bankr. N.D. Ohio 1999); *see Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) (noting that "not every tort judgment for conversion is exempt from discharge").

Under Ohio law, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St. 3d 93, 96 (1990). Generally, "the elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dice v. White Family Cos.*, 2007-Ohio-5755, 173 Ohio App. 3d 472, 477 (2007). Where conversion is based upon on a claim of unlawful retention of property or where a defendant comes into possession of property lawfully, the plaintiff must establish that "(1) [it] demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Id.; Jarupan v. Hanna*, 2007-Ohio-5081, 173 Ohio App. 3d 284, 293 (2007). And finally, where conversion is based upon the conversion of money, the plaintiff must show that "(1) there exists an obligation on the part of the defendant to deliver to the plaintiff specific money; and

4

(2) the money is capable of identification." *Howard v. McWeeney (In re McWeeney)*, 255 B.R. 3, 5 (Bankr. S.D. Ohio 2000); *Dice*, 173 Ohio App. 3d at 477.

The court finds that the evidence before it does not establish a claim for conversion. Initially, the court notes that the state court Default Judgment against Jutte Electric and HC3 Group, LLC, provided by Plaintiff in support of its Motion provides no basis in this proceeding for finding that Defendants willfully and maliciously caused injury to Plaintiff by converting its collateral. This court must accord the state court judgment the same preclusive effect the judgment would have in state court. *See Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). Because Defendants were not parties in the state court action, the Default Judgment has no issue preclusive effect in this proceeding. *See Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); *Cianciola v. Johnson's Island Prop. Owner's Assn.*, 981 N.E.2d 311, 315 (Ohio App. 2012).

The remaining evidence submitted by Plaintiff in support of its Motion consists of the Kent affidavit and attached exhibits. The affidavit and attached exhibits support a finding that Jutte Electric is in default of three loans that it executed in favor of Plaintiff and that are secured by, among other things, its equipment, materials and inventory. The evidence further supports a finding that, pursuant to Defendants' guarantees of performance of the obligations owed to Plaintiff by Jutte Electric, they owe $715,139.20, the total amount due under the Notes, plus interest, costs and attorney fees. However, as Defendants correctly assert, this evidence can do no more that establish a breach of contract claim.

The balance of the Kent affidavit is replete with content that is not based on personal knowledge, lacks foundation showing that he is competent to testify to the matters stated or contains conclusory allegations. For example, Kent avers "upon information and belief" that (1) "Debtors transferred, sold, or otherwise gave the Collateral . . .to HC3 Group LLC;" (2) "Debtors also kept some of the proceeds for their own personal use;" and (3) "Debtors . . . made transfers of assets with the actual intent to hinder, delay or defraud [Plaintiff], a creditor." [Kent Aff. ¶¶ 26, 29 & 36]. "Affidavits based on mere 'information and belief,' as opposed to facts the affiant *knows* to be true, are not proper." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007) (emphasis in original) *(citing Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831 (1950), *overruled on other grounds by Lear, Inc. v. Adkins,* 395 U.S. 653(1969))*; Fed. R. Civ. P. 56(c)(4); Fed. R. Bankr. P. 7056.

Kent further avers that "during [a judgment debtor examination], under oath, . . .Jutte admitted that he transferred the Collateral to HC3 Group for little-to-no money in return." [Kent Aff. ¶ 34]. A transcript of the debtor examination is not included as an exhibit, and Kent fails to explain how he personally knows

of or is competent to testify as to what transpired during the debtor examination to which he refers. Rule 56 requires that an affidavit "show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Kent's blanket statement in the first paragraph of his affidavit that the affidavit is based on personal knowledge is insufficient to meet this requirement. *See Angueira v. Arias*, 649 F. Supp. 299, 307 (D.P.R.1986) (finding that attempt to show personal knowledge by blanket statement to that effect is "completely inadequate"); *New Medium LLC v. Barco N.V.*, 612 F. Supp. 2d 958, 963 (N.D. Ill. 2009) (same); *Ortiz v. Anchor Realty Const., Inc.,* 2:08–CV–800, 2011 WL 2441918, *6, 2011 U.S. Dist. LEXIS 62737, *17 (S.D. Ohio June 14, 2011) (same).

Other averments include allegations such as "[Plaintiff] has a right to possession of the Collateral per the terms of the Security Agreement" and "[t]he actions of Debtors and in interference with [Plaintiff's] right to possession of the Collateral constitute conversion." [Kent Aff. ¶¶ 31 & 32]. Whether Plaintiff has a possessory right under the terms of the Security Agreement and whether Debtors' actions constitute conversion are legal conclusions. "[A]ffidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Pan Am. Pharm., Inc. v. Shelin*, 980 F.2d 730 (Table), (6th Cir. 1992) (*quoting Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985) ).

It light of the foregoing, the court finds Plaintiff's evidence, and specifically, Kent's affidavit, insufficient to support a finding that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Plaintiff has produced no proper evidence that Defendants caused a wrongful disposition of its property rights or that it had a right to possession of any particular property at the time of its disposition. While Jutte admits in his affidavit that he disposed of certain property in the ordinary course of business, he does not identify such property. To the extent that it consists of inventory, the security agreements specifically permit the sale of inventory. And although Plaintiff has a security interest in the proceeds of the sale of any inventory and such proceeds may not have been turned over to Plaintiff,[2] it has directed the court to no provision in the security agreements requiring turnover of those proceeds. Plaintiff also offers no evidence that it ever demanded turnover of any of its collateral.

Finally, given the admonition in *Geiger* that some but not all acts of tortious conversion constitute

---

[2] Jutte's affidavit does not specify what was sold in the ordinary course of business nor does it specify to whom it was sold. Although Plaintiff's evidence includes Kent's averment in his affidavit that "Debtors did not turn over any proceeds from the transfers to [Plaintiff]," [Kent Aff. ¶ 29], the transfers he refers to are the transfers averred by him "upon information and belief" to have been made by Defendants to HC3 Group. As discussed above, the fact of any such transfers is not in evidence.

6

a willful and malicious injury under § 523(a)(6), it was imperative that Plaintiff offer some evidence of the circumstances surrounding the alleged transfers for the court to make such a determination. Other than Jutte's affidavit regarding the sale of inventory in the ordinary course of business, the record is silent as to any circumstances relating to any transfers of collateral. The court lacks any basis in the record to find that Plaintiff has presented undisputed facts showing that Defendants possessed the culpable state of mind required for a nondischargeability determination under § 523(a)(6) as a matter of law with respect to any conversion of Plaintiff's collateral.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 11] be, and hereby is, **DENIED.**

###